UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KIMBERLY J. FREDRICK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC.<br><br>Defendant. | Civil Action No.:    2:26-cv-00042<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Kimberly Fredrick ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against The PNC Financial Services Group, Inc. ("PNC" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**NATURE OF THE ACTION**

1.      It is both unfair and unlawful for entities like PNC to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products without complying with the wellness program requirements under the Employee Retirement Income Security Act of 1974 ("ERISA"). This lawsuit challenges Defendant's unlawful practice of charging a "tobacco surcharge" under the PNC Financial Services Group, Inc. Group Benefit Plan (the "Plan") in a manner that violates ERISA and the implementing regulations. ERISA permits health-contingent wellness programs if, and *only if*, such programs strictly comply with the criteria governing these programs, including: (i) offering a meaningful and accessible reasonable alternative standard to

1

any individual being charged extra based on a health factor; (ii) clearly disclose the availability of that alternative standard in "all plan materials" describing the surcharge; and (iii) provide the "full reward," meaning the entire difference between the tobacco-user and non-tobacco-user contribution levels. *See* 29 U.S.C. § 1182; 42 U.S.C. § 300gg-4(j). Instead, Defendant imposes a discriminatory tobacco surcharge without providing participants with a reasonable alternative standard and fails to provide notice of the availability of a reasonable alternative standard, violating federal regulations and depriving employees of benefits to which they are entitled under ERISA.

2.      Tobacco surcharges have become more prevalent in recent years but, to be lawful, plans can impose these surcharges only in connection with *compliant* "wellness programs," meaning they must adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, and the Public Service Health Act ("PHSA") § 2705, the statute's non-discrimination provision. Accordingly, the Departments have issued clear regulatory criteria that "must be satisfied" to qualify for the statutory exception or safe-harbor, which employers can invoke only if they affirmatively demonstrate full compliance with all these strict requirements in response to claims that their program is discriminatory. Moreover, courts must defer to the agency's interpretation of its own regulations, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, *Auer v. Robbins*, 519 U.S. 452 (1997), ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

3.      The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of these programs being a "subterfuge

for discriminating based on a health factor." The regulations make clear that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows all participants to obtain the full reward, including retroactive refunds of surcharges paid while completing the alternative standard. Employers must also notify participants of the alternative standards that are available to them to ensure they are aware of the various pathways to improving their health. A wellness program must not function as a penalty imposed on certain participants under the guise of a health initiative. Defendant's Plan fails to clearly establish a reasonable alternative standard, does not notify employees in key participant-facing materials that such an alternative is available, does not ensure that employees who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs

---

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

5.      Outcome-based programs,[2] such as smoking cessation programs, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same, full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[3] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added). Defendant violates these requirements by failing to provide a reasonable alternative standard that provides the "full reward"

---

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**") ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

to employees who complete that standard, by operating a non-compliant penalty structure rather than a lawful wellness incentive, and by failing to clearly communicate the availability of a reasonable alternative standard in all plan materials referencing tobacco-related premium differentials, including plan documents and summary plan descriptions ("SPDs"). *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

6.      Defendant cannot qualify for the statutory safe harbor permitting discriminatory surcharges because the Plan fails to satisfy all the regulatory criteria, which "must be satisfied," (*id.*, 33160) for a wellness program to be lawful under ERISA. Final Regulations, 33160. Defendant's wellness program does not offer a reasonable alternative standard that provides the "full reward" to all participants who satisfy the alternative standard, as explicitly required by ERISA § 702 of ERISA, 29 U.S.C. § 1182, 42 U.S.C. § 300gg-4(j)(3)(D), and 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4). The Plan fails to offer or notify participants of a clearly defined, reasonable alternative standard that ensures employees who satisfy that standard receive a full refund of the additional amounts they paid for being a tobacco user. Instead, PNC retains these ill-gotten funds in its own accounts, earns interest on them, and contributes less to the Plan. By failing to administer its surcharge program in compliance with ERISA's wellness regulations, Defendant cannot claim the protections of ERISA's safe harbor and is liable for its unlawful surcharge scheme.

7.      By failing to make available an alternative standard or a mechanism for retroactive reimbursement to those who satisfy that standard, PNC operated an unlawful surcharge scheme that deprives employees who use nicotine of the opportunity to avoid the $30 biweekly charge that is not imposed on non-smokers. This is not a minor technical failure; it is a fundamental violation

of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as non-smokers.

8. Further, PNC failed to provide proper notice. PNC failed to include a description of the terms of an alternative standard and failed to include contact information for obtaining the alternative standard in key participant-facing materials. Upon information and belief, Defendants failed to include reference to a wellness program in *all* plan materials discussing the surcharge, despite the Departments' clear instructions that, for ERISA plans, wellness programs are required to be disclosed in these documents if compliance affects premiums. Final Regulations, 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must include this disclosure"). This standalone violation disqualifies Defendant from asserting the affirmative defense in response to the allegations herein that their tobacco surcharge program is discriminatory and violates ERISA. Again, because Defendant's tobacco surcharge does not satisfy the necessary regulatory criteria for a "program[] of health promotion," Defendant cannot qualify under the statutory safe harbor, meaning the tobacco surcharge they impose on participants is discriminatory in violation of ERISA.

9. This Complaint alleges that PNC imposed a discriminatory and unlawful tobacco surcharge. PNC bears the burden of proving that its tobacco surcharge is lawful by showing that its wellness program fully complies with every requirement under ERISA, including making available a reasonable alternative standard that allows all participants to avoid the surcharge and receive the full reward if they satisfy that standard. This type of discrimination is permissible only if employers meet strict criteria, which PNC has not. There is no indication that the wellness program provides the "full reward" to all similarly situated individuals. Further, even if PNC did make the "full reward" available to all nicotine-using participants, they do not tell their participants

that. Not informing participants that there are avenues available to them to avoid the surcharge makes the surcharge facially noncompliant. No amount of *post hoc* justifications can cure this fundamental defect. Defendant's Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

10.     Participants like Ms. Fredrick are permitted to challenge a surcharge when there is no clear wellness program offered or when there is no notice of any avenue to avoid the surcharge. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff 's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or exemptions.'").

11.     Plaintiff is a former employee of PNC Bank, NA who paid the unlawful tobacco surcharge to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

12.     Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent PNC from continuing to profit from its violations under 29 U.S.C. § 1109.  Under 29 U.S.C. § 1109, PNC is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of herself

and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

13.     Plaintiff Kimberly Fredrick is, and at all times mentioned herein was, an individual citizen of the State of Ohio residing in the County of Sandusky. Plaintiff was an employee of PNC Bank, NA who paid a tobacco surcharge of $30 per paycheck in connection with the health insurance offered through PNC during her employment. Plaintiff was required to pay this tobacco surcharge to maintain health insurance under the Plan.

14.     Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

15.     PNC is a financial services company based in Pittsburgh, Pennsylvania that provides banking, lending, and related financial products and services to consumers and businesses. PNC operates a banking subsidiary, PNC Bank, NA, which conducts business nationwide. PNC is the sponsor and administrator of the Plan.

16.     At all times relevant to this lawsuit, upon information and belief, PNC maintained, and managed the Plan. PNC employs over 60,000 individuals worldwide. As of December 31, 2024, there were over 55,000 participants in the Plan. Defendant's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and § 28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the

number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

18.    This Court has personal jurisdiction over Defendant because PNC is headquartered in this District, and Defendant has purposefully availed itself of the privilege of conducting business in Pennsylvania.

19.    Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because PNC is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

### I.    DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A.    Statutory and Regulatory Requirements

20.    To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

21.    The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention" (29 U.S.C. § 1182(b)(2)(B)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

9

22.    Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the DOL the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. 29 U.S.C. § 1135. Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

23.    Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

24.    The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163 (emphasis added). "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used

10

by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria and that the surcharge is non-discriminatory.

25.    Compliance with the regulatory criteria is not optional. These criteria serve as the standard by which these wellness programs can be evaluated and are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("***these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention*** . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . .") (emphases added).

26.    In satisfying each of the criteria, plans can ensure that wellness programs are "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* They prevent employers from using surcharges as a revenue-generating mechanism dressed up as a program of health promotion. If a program fails to meet even one of these requirements, the program does not qualify as a "program[] of health promotion" and cannot qualify under ERISA's statutory carve-out. In that case, any premium differentials imposed based on a health factor violate the statute's anti-discrimination provisions. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if all of the [] requirements are satisfied***.") (emphasis added).[4] In sum, a wellness program

---

[4] Congress codified parts of the 2006 regulation's regulatory criteria when, through the Patient Protection Act ("PPA") and ACA, it amended the PHSA, and incorporated (nearly verbatim) the regulatory language into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the [PHSA] [42 U.S.C. § 300gg *et seq.*] (as amended by the

that fails to satisfy each criterion is not a legitimate health promotion initiative but an unlawful

penalty that discriminates based on health status, in direct violation of ERISA's protections.

## B. Regulatory Criteria

27.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-

based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance

annually to qualify for the reward associated with the program to ensure ongoing

accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only

coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and

cannot be "a subterfuge for discriminating based on a health factor." This determination

is based on all the relevant facts and circumstances. "To ensure that an outcome-based

wellness program is reasonably designed to improve health and does not act as a

subterfuge for underwriting or reducing benefits based on a health factor, a reasonable

alternative standard to qualify for the reward must be provided to any individual who

---

[PPA and ACA]) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]"). Since then, the Departments have, in accordance with the authority they were granted, updated the regulatory framework through the Final Regulations, refining and clarifying the requirements to ensure compliance with ERISA's nondiscrimination provisions and the statutory criteria established by Congress. *See* 42 U.S.C. § 300gg-4(n) ("Nothing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section"); *see also* 45 C.F.R. § 146.121(f) (adopting identical language to § 2590.702(f)).

does not meet the initial standard based on a measurement, test, or screening. . . .” § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: “The full reward under the outcome-based wellness program must be available to all similarly situated individuals.” § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants’ personal physician’s recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

28.     The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute’s protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

29.     Regarding the first criteria, “the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease.” Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

30.     A key requirement of the fourth criterion for outcome-based programs is that the “full reward” must be available to “all similarly situated individuals[,]” regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is “[t]he intention of the Departments . . . that, regardless of the type of wellness program, every individual participating in the program should

be able to receive the full amount of any reward or incentive. . . ." *Id*. (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is mandatory, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year*. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine *how* to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) *as long as . . . the individual receives the full amount of the reward*.

Final Regulations, 33163 (emphases added).

31.    The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id*., Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

32.    For health contingent wellness programs, the Final Regulations require the notice be disclosed "in all plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD),

14

as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Here, PNC's participant-facing materials do not mention an alternative standard with contact information that informs participants of all their rights under ERISA.

33.     Defendant's tobacco surcharge is unlawful because it fails to comply with the Final Regulations governing tobacco surcharges. As discussed, the Final Regulations provide that outcome-based wellness programs, such as those involving tobacco cessation programs, are permissible under ERISA *only if all regulatory requirements are satisfied*. *See* 29 C.F.R. § 2590.702(f)(4).

34.     The Final Regulations provide clear examples of compliant and non-compliant tobacco surcharge programs. In Example 6, the group health plan imposes a tobacco use surcharge as part of its wellness program, but it remains compliant with ERISA regulations because it offers a reasonable alternative standard in the form of a smoking cessation program. Final Regulations, 33180. The hypothetical plan imposes a premium surcharge on tobacco users, which is determined annually based on a health risk assessment (i.e., participants self-identify as smokers). To avoid the surcharge, participants who use tobacco are not required to stop smoking entirely; instead, they can participate in a smoking cessation program offered by the plan. *Id.* The smoking cessation program is a "reasonable alternative standard" because it gives participants another way to avoid the surcharge, even if they are unable to quit smoking. *Id.*

35.     The plan facilitates participation in the alternative standard by ensuring the program is not unreasonably burdensome and is cost-free to participants. *Id.* Participants can avoid the surcharge simply by completing the smoking cessation program—they are not penalized for failing to quit smoking. *Id.* The hypothetical plan in Example 6 also meets the strict notice requirements

15

under ERISA regulations because it clearly informs participants (a) about the availability of the alternative standard (i.e., the smoking cessation program), (b) how to access the program, including providing contact information, and (c) that the plan will accommodate recommendations from the participant's personal physician if the cessation program needs to be adjusted for medical reasons. *Id.*

36.     Further, the example provides that participants can qualify for the reward (or avoid the surcharge) at least once per year. *Id.* The tobacco surcharge described in Example 6 of the Final Regulations is permissible under ERISA because the program is reasonably designed to promote health by offering tobacco users a legitimate alternative path to avoid the surcharge. The plan ensures the alternative standard is reasonable by providing access to the "full reward" for "all similarly situated individuals" and does not impose unnecessary burdens on participants. Further, the plan fully complies with the notice requirements by clearly disclosing the smoking cessation program, contact information, and the option for physician accommodations. The Final Regulations conclude that the premium differential is not discriminatory because the employer satisfies all the regulatory requirements under 29 C.F.R. § 2590.702(f)(4)(i), (iii), (iv), and (v) and avoids being classified as a discriminatory wellness program.

37.     Unlike Example 6 of the Final Regulations, Defendant does not provide participants with a reasonable alternative standard to avoid the tobacco surcharge they impose on participants. There is no smoking cessation program or an alternative route offered to tobacco users so they can obtain the "full reward" (i.e., avoiding the surcharge). Thus, tobacco users are penalized based solely on their status as smokers, which violates ERISA's non-discrimination provisions.

38.     Defendant should have implemented a reasonable alternative standard in the form of a smoking cessation program that allowed users to avoid the surcharge for the entire plan year,

regardless of when they complete that program during the Plan year. Defendant should have offered the program at no cost to participants and ensured that it was accessible and not overly burdensome by, for example, providing for convenient times and locations. Defendant should have ensured that the program provided those who completed it with the "full reward" through reimbursements or pro rata adjustments to insurance premiums. Defendant should have reviewed the terms of its surcharge and wellness program to ensure all of it complied with federal law.

39.    Additionally, Defendant should have included clear and specific notice of the availability of the reasonable alternative standard in all participant-facing Plan materials discussing the surcharge. That notice should have stated that an alternative standard was available, and Defendant should have reviewed the communications provided to participants to ensure those communications complied with federal law. Defendant should have provided contact information for accessing the alternative standard and should have included a statement that the Plan would accommodate the recommendations of the participant's personal physician regarding the medical appropriateness of the alternative standard.

40.    Defendant's Plan materials, including the SPD and annual benefits guides, fail to mention the availability of a reasonable alternative standard. Without this disclosure, participants are unaware of their rights under ERISA and cannot access alternative means to avoid the surcharge.

41.    By failing to meet the regulatory requirements, Defendant's tobacco surcharge is discriminatory, and in clear violation of ERISA and its implementing regulations.

42.    Allowing companies like PNC to exploit its employees and unlawfully extract millions from them under the guise of a wellness program that is, in reality, a cash grab, directly contradicts ERISA's purpose of protecting workers from health-based discrimination. If

unchecked, this practice would permit fiduciaries to unjustly shift the financial burdens onto employees, and penalize compliant employers for spending the time and money to ensure their programs complied with ERISA and the Final Regulations.

## II.    DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

43.    Defendant's tobacco surcharge violates ERISA because PNC offers no "program[] of health promotion or disease prevention." 29 U.S.C. § 1182(b)(2)(B). To qualify for ERISA's safe harbor under § 1182(b)(2)(B) that allows a plan to charge a discriminatory fee, the employer *must* offer a wellness program with a clearly defined, reasonable alternative standard that provides all participants who satisfy that standard to receive the full reward, and must notify participants of the various avenues available to avoid the surcharge. Defendant fails to meet these requirements because there is no smoking cessation program offered, and, even if there is, Defendant does not meaningfully inform participants of that wellness program.

44.    Specifically, Defendant imposes a surcharge of $30 per paycheck based solely on a participant's nicotine use. Failing to make available a wellness program means Defendant fails to satisfy at least four of the five criteria for a compliant wellness program. *See* Final Regulations, 33163 ("the final regulations direct that an outcome-based wellness program *must provide a reasonable alternative standard* to qualify for the reward, for all individuals who do not meet the initial standard that is related to a health factor, in order to be reasonably designed") (emphasis added).

45.    Defendant fails to give participants at least one opportunity per year to qualify for the reward, in violation of § 300gg-4(j)(3)(C), fails to make available the full reward, in violation of § 300gg-4(j)(3)(D), and fails to disclose the availability of a reasonable alternative, in violation of § 300gg-4(j)(3)(E). By failing to make available and notify participants of a wellness program,

Defendant not only violates the statute but also the Final Regulations, which most district courts around the country have recently found to be enforceable.[5] These deficiencies make Defendant's tobacco surcharge an impermissible cost-shifting scheme rather than a compliant health promotion program

46.     During the course of her employment with PNC, Plaintiff paid an unlawful surcharge. Upon information and belief, the company's enrollment materials provided to her did not make available a smoking cessation program. Further, upon information and belief, if Plaintiff or participants for whom she paid had enrolled in a program, that person would have had to complete the program within 120 days of the commencement of benefits, which is an unreasonably short period to complete a program.

47.     ERISA's safe harbor protection applies only if every regulatory criterion is satisfied. Defendant's numerous violations of the regulatory framework render it ineligible for safe harbor protection. *See* 29 C.F.R. § 2590.702(f)(4).

### III.    DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

48.     PNC administers the tobacco surcharge by designating which participants are charged and withholding the surcharge directly from participants' paychecks as a before-tax plan contribution, alongside required premium deductions. These deductions are part of the funding

---

[5] *See Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882 (E.D. Va. 2025); *Mehlberg v. Compass Grp. USA, Inc.*, No. 24-cv-04179, 2025 U.S. Dist. LEXIS 84589 (W.D. Mo. Apr. 15, 2025); *Lipari-Williams v. Mo. Gaming Co.*, 339 F.R.D. 515 (W.D. Mo. 2021); *Sec'y of Labor v. Macy's, Inc.*, No. 1:17-cv-541, 2021 U.S. Dist. LEXIS 221603 (S.D. Ohio Nov. 17, 2021); *Fisher v. GardaWorld Cash Serv. Inc.*, No. 3:24-cv-00837, 2025 U.S. Dist. LEXIS 167251 (W.D.N.C. Aug. 27, 2025); *Buescher v. N. Am. Lighting, Inc.*, No. 24-cv-2076, 2025 U.S. Dist. LEXIS 135992 (C.D. Ill. June 30, 2025); *Waggoner v. Carle Found.*, No. 24-cv-2217, ECF 27 (C.D. Ill. Sept. 16, 2025); and *Bailey v. Sedgwick Claims Mgmt. Servs. Inc.*, No. 2:24-cv-02749, 2025 U.S. Dist. LEXIS 190335 (W.D. Tenn. Sep. 26, 2025).

stream for Plan coverage, not separate penalties, and are treated the same way as other contributions made to support the Plan's medical benefits.

49.     The governing Plan is funded by both employer and participant contributions. Defendant commits a defined company contribution amount toward the cost of coverage, with participants paying the balance. By layering a tobacco surcharge on top of those required participant contributions, Defendant created what should have been a third stream of funding available to the Plan: (1) participants' required premium contributions, (2) PNC's promised contribution amount, and (3) the additional tobacco surcharge. But instead of allowing all three funding streams to flow into the Plan, PNC collected that money and used it to offset its funding obligation to the Plan. Because the cost of coverage for each tier is fixed, every dollar of surcharge collected reduced PNC's contribution dollar for dollar. Thus, rather than increasing resources available to the Plan, the surcharge simply shifted costs away from PNC and onto participants. When Defendant took these deductions in the same manner as other premium contributions, it comingled the funds and used them to offset its own contributions to the Plan.

50.     This practice constitutes classic self-dealing because Defendant manipulated the Plan's funding structure to realize savings for itself, depriving the Plan of the full benefit of the three distinct funding streams it should have received. Defendant's actions caused the Plan to lose the very employer contributions it was otherwise supposed to receive, in violation of ERISA's fiduciary duty standards.

51.     In doing so, Defendant failed to act solely in the interest of participants and beneficiaries, as ERISA requires. Rather than use the surcharge proceeds to offset the premiums of non-smokers, Defendant used the funds to save itself money. The money that PNC did not have to contribute to the Plan sat in its accounts and earned interest, while the Plan was deprived of the

20

full amount of funding (and interest) it should have received, stripping the Plan of money it was supposed to have while converting those savings into financial benefit for PNC. This diversion of funds is self-dealing, violates the duty of loyalty, and constitutes a prohibited transaction under ERISA §§ 404 and 406.

## CLASS DEFINITION AND ALLEGATIONS

52.    Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

53.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

54.    Excluded from the Class are PNC's officers and directors.

55.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

56.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1).

57.    **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

21

58.    **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

b.  Whether Defendant offered an opportunity to satisfy an alternative standard at least once during each Plan year;

c.  Whether Defendant offered a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

d.  Whether Defendant provided compliant notice in *all* plan materials describing the surcharge;

e.  Whether Defendant provided the required statement that participants' personal physicians' recommendations would be accommodated in all participant-facing materials discussing the surcharge;

f.  Whether Defendant's wellness program violates ERISA and the Final Regulations;

g.  Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;

h.  Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

i.  The appropriate mechanisms to determine damages on a class-wide basis

59.    **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

60.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they

22

were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

61.    Plaintiff seeks declaratory and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, PNC will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL SURCHARGE – FAILURE TO PROVIDE A REASONABLE ALTERNATIVE STANDARD
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv))**

62.    Plaintiff re-alleges and incorporates herein by reference allegations 1–61 of this Complaint.

63.    Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges of $30 biweekly on participants who use tobacco, without complying with the regulatory requirements, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendant's decision not to make available a reasonable alternative standard that ensures participants who satisfy that standard are provided with the full reward, in violation of ERISA and the Final Regulations.

64.     ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). Defendant's Plan violates this prohibition because it fails to provide a reasonable alternative standard ensuring that participants who satisfy that standard are eligible for the full reward, as required by 29 C.F.R. § 2590.702(f)(4)(iv).

65.     Participants who completed the designated cessation program were forced to pay out of pocket up-front and were allowed to avoid the surcharge only prospectively. They were denied retroactive reimbursement for prior surcharge payments, contrary to ERISA's rule mandating that the "full reward" be made available to "all similarly situated individuals."

66.     Defendant's imposition of the tobacco surcharge violates ERISA § 702, PHSA § 2705, and the Final Regulations, including but not limited to 45 C.F.R. § 146.121(f)(4) and 29 C.F.R. § 2590.702(f)(4). The Plan's wellness program is noncompliant because it fails to satisfy the full reward requirement for all similarly situated individuals. Upon information and belief, PNC does not make available a cessation program. However, upon information and belief, participants who complete a smoking cessation program within 120 days of benefits starting can avoid the surcharge; participants who complete a program outside of this window are not reimbursed for surcharges paid prior to completion.

67.     Defendant's failure to make the full reward available to all similarly situated individuals constitutes unlawful discrimination based on a health-status-related factor and renders the surcharge an unlawful premium differential under 29 U.S.C. § 1182(b)(1).

24

68.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

**COUNT II**
**UNLAWFUL SURCHARGE – FAILURE TO PROVIDE REQUIRED NOTICE**
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA 2705, 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(v))**

69.     Plaintiff re-alleges and incorporates herein by reference allegations 1–61 of this Complaint.

70.     ERISA requires that plans imposing a health-contingent premium differential must disclose "in all plan materials describing the terms of the wellness program" the availability of a reasonable alternative standard that allows individuals to avoid the surcharge. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v). This mandatory disclosure must be clear, conspicuous, and included in every document that discusses the surcharge. Defendant fails to satisfy this requirement.

71.     Defendant's Plan materials, including benefit guides and other participant-facing materials, do not contain a compliant notice identifying a *reasonable* alternative standard that informs participants they will be made whole, describing how to access or complete the alternative standard, or providing contact information. The notice that is provided is deficient because it fails

to explain that completion of any standard removes the surcharge and does not identify the cessation program as the reasonable alternative standard required under ERISA. Further, it provides no clear contact information for accessing the alternative standard. Upon information and belief, there are participant-facing communications describing the tobacco surcharge that fail to properly notify participants of the alternative standard and all avenues to avoid the surcharge. Upon information and belief, Defendant also released Plan materials that omitted the required statement that recommendations of an individual's personal physician would be accommodated in determining a reasonable alternative standard.

72.    Because core, participant-facing documents describing the program and the premium differential omitted these mandatory disclosures, the tobacco surcharge program fails to satisfy the notice requirements necessary to qualify for ERISA's safe-harbor protection.

73.    Defendant's imposition of the tobacco surcharge therefore constitutes unlawful discrimination based on a health-status-related factor in violation of 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4.

74.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

## COUNT III

26

**BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

75.     Plaintiff re-alleges and incorporates herein by reference allegations 1–61 of this Complaint.

76.     At all relevant times, PNC was the administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan's assets.

77.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

78.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan. Paystubs confirm that these surcharges were collected as before-tax deductions, alongside other contributions to the Plan, and thus were Plan assets from the moment of collection. Defendant breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of federal law and in violation of the terms of the Plan and then diverting those funds to reduce its own costs. The Plan should have received three funding streams: (1) employee premium contributions, (2) PNC's contribution amount, and (3) the surcharge itself. But Defendant used the surcharge

amounts to displace its own contributions. Upon information and belief, PNC further profited by retaining those amounts in its own accounts, earning a float, and failing to remit the full employer contribution owed to the Plan.

79.    Year after year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management and administration of the Plan and its surcharge programs, including the decision not to offer a compliant wellness program. Defendant exercised discretionary authority by deciding how surcharge proceeds were handled, funneling the surcharge funds indirectly into its own coffers. Defendant also controlled whether participants would receive the "full reward" of avoiding the surcharge for the Plan year and failed to administer notices or alternatives required by ERISA's implementing regulations.

80.    Upon information and belief, Defendant controlled and disseminated to all employees the Benefit Guides and other Plan communications discussing the premium differential but failed to notify them of all the way by which they could avoid the entire year of surcharges. PNC further failed to conduct periodic or prudent reviews of its surcharge and wellness program, and the related communications, to ensure compliance with ERISA and its regulations. Instead, it allowed a structurally defective wellness program to persist year after year, even though it resulted in discriminatory surcharges and deprived the Plan of the employer contributions it should have received.

81.    As a result of the unlawful surcharges, PNC enriched itself at the expense of the Plan. By deducting these amounts directly from participants' paychecks without properly administering a compliant wellness program, PNC secured financial savings for itself while

28

participants and the Plan bore increased costs. The structure of the program ensured that "all similarly situated individuals" could not obtain the "full reward" for the entire plan year, and Defendant' communications failed to disclose participants' rights to a reasonable alternative standard. In this way, Defendant transformed what should have been an employer-funded plan contribution into an unjust enrichment for itself, contrary to 29 U.S.C. § 1104(a)(1)(A).

82.     Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Defendant caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). PNC is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's assets.

83.     By retaining the amounts of the tobacco surcharges, PNC increased its own corporate assets and saved the money it would otherwise have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing. The surcharges should have supplemented, not displaced, PNC's contributions. By retaining and misusing the surcharges, PNC benefitted from the float at the expense of the Plan and its participants, leaving the Plan with less than what it should have received under its governing documents.

84.     PNC breached its fiduciary duties by: administering a noncompliant Plan; failing to make available the "full reward" to participants; failing to properly disclose material information about the wellness programs to participants—specifically, the right to include their own physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting on behalf of a party whose interests were adverse to the Plan and its

29

participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for year, to ensure compliance with ERISA's requirements. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from PNC. Had Defendant complied with its fiduciary duties, it would have noticed its deficiencies and taken steps to correct the behavior. More importantly, it would have ensured that the surcharge proceeds were deposited into the Plan as additional funding, and safeguarded participants from bearing unlawful costs.

85.    As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

86.    Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

87.    Plaintiff re-alleges and incorporates herein by reference allegations 1–61 of this Complaint.

88.    At all relevant times, PNC was the administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan's assets.

89.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of

loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan*, 680 F.2d at 272.

90.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of Plaintiff and other similarly situated individuals, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks. Year after year, Defendant administered a noncompliant Plan and wellness program. Defendant administered the Plan by exercising discretionary authority over how surcharge proceeds were handled, whether participants would receive the "full reward," and by communicating with participants about their rights under the Plan.

91.     Upon information and belief, Defendant controlled and disseminated to all employees the benefit guides and other Plan communications discussing the premium differential but failed to notify them of all the way by which they could avoid the entire year of surcharges. PNC further failed to conduct periodic or prudent reviews of its surcharge and wellness program, and the related communications, to ensure compliance with ERISA and its regulations. Instead, it allowed a structurally defective wellness program to persist year after year, even though it resulted in discriminatory surcharges and deprived the Plan of the employer contributions it should have received.

92.     PNC breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by using ill-gotten funds to shrink its own financial contributions. It also failed to properly notify participants, year after year, of a compliant wellness program and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

93.    PNC breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by using ill-gotten funds to shrink its own financial contributions. It also failed to properly notify participants, year after year, of a compliant wellness program and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

94.    As a result of the unlawful surcharges, PNC enriched itself at the expense of the Plan. By deducting these amounts directly from participants' paychecks without properly administering a compliant wellness program, PNC secured financial savings for itself while participants bore increased costs. The structure of the program ensured that "all similarly situated individuals" could not obtain the "full reward" for the entire plan year, and Defendant's communications failed to disclose participants' rights to a reasonable alternative standard. In this way, Defendant transformed what should have been an employer-funded plan contribution into an unjust enrichment for itself, contrary to 29 U.S.C. § 1104(a)(1)(A).

95.    Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, PNC engaged in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). PNC is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's assets.

96.    By retaining the amounts of the tobacco surcharges, PNC increased its own corporate assets.

97.    Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to make available the "full reward" to participants; failing to properly disclose material

32

information about the wellness programs to participants—specifically, the right to include their own physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for year, to ensure compliance with ERISA's requirements. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from PNC. Had Defendant complied with its fiduciary duties, it would have noticed its deficiencies and taken steps to correct the behavior. More importantly, it would have ensured that the surcharge proceeds were deposited into the Plan as additional funding, and safeguarded participants from bearing unlawful costs.

98.    As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

99.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek individual equitable relief necessary to redress Defendant's fiduciary breaches, including but not limited to restitution, surcharge, disgorgement, a constructive trust over improperly retained funds, and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

33

B.  A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C.  An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge;

D.  A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, inter alia, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E.  An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F.  Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G.  Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H.  Restitution of all surcharge amounts Defendant collected;

I.   Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J.   Relief to the Plan from Defendant for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K.   An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L.   An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.   Any other relief the Court determines is just and proper.

Dated: January 9, 2026

Respectfully submitted,

FEINSTEIN DOYLE PAYNE & KRAVEC, LLC

*/s/ Joel R. Hurt*
Joel R. Hurt (PA ID No. 85841)
Ruari McDonnell (PA ID No. 316998)
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
E: jhurt@fdpklaw.com
E: mcdonnell@fdpklaw.com

SIRI & GLIMSTAD LLP
Oren Faircloth (*pro hac vice* forthcoming)
William H. Payne (*pro hac vice* forthcoming)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*