**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KIMBERLY J. FREDRICK, on behalf of herself and all other similarly situated, | *FILED ELECTRONICALLY* |
| Plaintiff, | Civil Action No. 2:26-cv-00042-MJH-KT |
| vs. | Judge Marilyn J. Horan |
| THE PNC FINANCIAL SERVICES GROUP, INC., | Magistrate Judge Kezia O.L. Taylor |
| Defendant. | |

## DEFENDANT THE PNC FINANCIAL SERVICES GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 2

        A.      Plaintiff Has Not Pled A Plausible Claim For Failure to Offer a
                Reasonable Alternative or Provide A Full Reward under ERISA or the
                PHSA (Count I). .................................................................................. 2

                1.      There is No Statutory Basis for Plaintiff's Claim that ERISA
                        Entitles Her to a Reasonable Alternative Standard. .................................... 2

                2.      A "Full Reward" is "Made Available" to Anyone Who Qualifies
                        For the Reward During The Once Each Year Opportunity. ........................ 4

                3.      Plaintiff Has Not Pled Facts Sufficient to Suggest That The Plan
                        Was Not Reasonably Designed To Promote Health or Prevent
                        Disease. ...................................................................................... 7

        B.      Plaintiff Has Not Pled A Plausible Notice Claim (Count II) Under ERISA
                and the PHSA .................................................................................... 9

        C.      Plaintiff Does Not Have Standing Under ERISA Section 502(a)(2) And
                Has Not Otherwise Pled A Plausible Claim In Counts III and IV ........................ 10

                1.      Plaintiff Cannot Bring A Claim Under ERISA Section 502(a)(2) As
                        She Has Not Adequately Pled Injury To the Plan. ................................... 10

                2.      Plaintiff Has Pled No Plausible Breach of Fiduciary Duty or
                        Prohibited Transaction Based on Imposing and Lifting Tobacco
                        Surcharges Or Using Surcharges To Pay Plan Benefits. ...........................11

                3.      Plaintiff Has Pled No Plausible Prohibited Transactions Under 29
                        U.S.C. §§ 1106(a)(1)(D) or (b)(1) ...................................................... 13

III.    CONCLUSION ................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: AEP ERISA Litig.*,
327 F. Supp. 2d 812 (S.D. Ohio 2004) ....................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................2

*Barragan v. Honeywell Int'l Inc.*,
No. 24-4529, 2025 WL 2383652 (D.N.J. Aug. 18, 2025) .......................................13

*Bailey v. Sedgwick Claims Mgmt. Servs. Inc.*,
No. 24-cv-2749, 2025 WL 2779899 (W.D. Tenn. Sept. 26, 2025) ................................ *passim*

*Bokma v. Performance Food Group, Inc.*,
783 F. Supp. 3d 882 (E.D. Va. 2025) .....................................................................12

*In re Burlington Coat Factory Secs. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ....................................................................................9

*Cain v. Siemens Corp.*,
No. 24-8730, 2025 WL 2172684 (D.N.J. July 31, 2025) .......................................13

*Chirinian v. Travelers Companies, Inc.*,
No. 24-3956, 2025 WL 2147271 (D. Minn. July 29, 2025) .......................5, 6, 9, 11

*Corley v. U.S.*,
556 U.S. 303 (2009) ..............................................................................................3, 5

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ................................................................................................10

*Danza v. Fidelity Mgmt. Tr. Co.*,
533 F. App'x 120 (3d Cir. 2013) ............................................................................14

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
725 F.3d 406 (3rd Cir. 2013) ..................................................................................11

*Fisher v. GardaWorld Cash Serv. Inc.*,
No. 24-837, 2025 WL 2484271 (W.D. N.C. Aug. 28. 2025) ..................................14

*Fumich v. NovoNordisk*,
No. 24-9158, 2025 WL 2399134 (D.N.J. Aug. 19, 2025) .......................................13

*Greene v. Progressive Corp.*,
No. 24-1890, 2026 WL 785004 (N.D. Ohio Mar. 20, 2026) ............................................12, 15

*Hughes Aircraft Co v. Jacobson*,
525 U.S. 432 (1999) .............................................................................................................13

*Knight v. LHC Group, Inc.*,
No. 25-263, 2025 WL 4351515 (W.D. La. Nov. 18, 2025) .......................................................9

*Leslie v. Rentokil N. Amer. Inc*,
No. 25-1423, 2026 WL 950490 (E.D. Pa. Apr. 8, 2026) .......................................................7, 15

*Lipari-Williams v. Missouri Gaming Co.*,
339 F.R.D 515 (W.D. Mo. 2021) ...........................................................................................11

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) .........................................................................................................13, 15

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .............................................................................................................3, 4

*Mehlberg v. Compass Grp. USA, Inc.*,
No. 24-4179, 2025 WL 1260700 (W.D. Mo. Apr. 15, 2025) ............................................12, 15

*Noel v. Pepsico, Inc.*,
No. 24-cv-7516, 2026 WL 558118 (S.D.N.Y. Feb. 27, 2026) ...................................... *passim*

*Parker v. TTEC Holdings, Inc.*,
No. 24-3148, 2026 WL 917789 (D. Col. Mar. 30, 2026) ...................................................8, 11

*Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*,
722 F.3d 861 (6th Cir. 2013) ................................................................................................15

*Plesha v. Ascension Health Alliance*,
No. 24-1459, 2026 WL 279321 (E.D. Mo. Feb. 3, 2026) .............................................1, 8, 12

*In re: Schering-Plough ERISA Litig.*,
420 F.3d 231 (3d Cir. 2005) .................................................................................................11

*Schultz v. Glenn Falls Hosp.*,
No. 25-581, 2026 WL 850332 (N.D.N.Y. Mar. 26, 2026) .........................................11, 13, 15

*Sec'y of Lab. v. Macy's*,
No. 1:17-cv-541, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021) ......................................6, 12

*Siko v. Kassab, Achbold & O'Brien*,
No. 98-402, 1998 WL 464900 (E.D. Pa. Aug. 5, 1998) .......................................................10

*Trout v. Meijer, Inc.*,
  No. 25-1378, 2026 WL 1098213 (W.D. Mich. Apr. 23, 2026) ...................................... *passim*

*Varity Corp. v. Howe*,
  516 U.S. 489 (1995) ...................................................................................................11

*Waggoner v. The Carle Found.*,
  No. 24-2217, ECF No. 27 (C.D. Ill. Sept. 16, 2025) .................................................12

*Williams v. Bally's Management*,
  813 F. Supp. 3d 263 (D.R.I. 2025).........................................................................8, 10

*Wilson v. Whole Food Market*,
  No. 25-85, 2026 WL 196517 (W.D. Tex. Jan. 20, 2026) ..............................7, 12, 15

*Zheng v. Gonzales*,
  422 F.3d 98 (3d Cir. 2005)............................................................................................4

**Statutes**

29 U.S.C. § 1106, ERISA Section 406 .......................................................................15

29 U.S.C. §§ 1106(a), ERISA Section 406(a) ...................................................2, 13, 14

29 U.S.C. § 1106(b), ERISA Section 406(b)............................................2, 13, 14, 15

29 U.S.C. §1132(a)(2), ERISA Section 502(a)(2) ............................................2, 10, 11

29 U.S.C. § 1132(a)(3), ERISA Section 502(a)(3) .......................................................11

29 U.S.C. § 1135..........................................................................................................4

42 U.S.C. § 300gg-4(j)(3)(B)........................................................................................7

42 U.S.C. § 300gg-4(j)(3)(C)...............................................................................1, 4, 7

42 U.S.C. § 300gg-4(j)(3)(D)(i)....................................................................................2

42 U.S.C. § 300gg-4(n)................................................................................................4

**Regulations and Other Authorities**

29 C.F.R. § 2510.3-102...............................................................................................13

29 C.F.R. § 2590.702(f)(4)(i).........................................................................................4

29 CFR § 2590.702(f)(4)(iv)(A) ...................................................................................2

Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78
Fed. Reg. 33,158 (June 3, 2013) ............................................................................2, 7, 8

Nondiscrimination and Wellness Programs in Health Coverage in the Group
Market, 71 Fed. Reg. 75,014 (Dec. 13, 2006) .........................................................3

About Affordable Care Act Implementation (Part XVIII) & Mental Health Parity
Implementation (Jan. 9, 2014) (https://www.dol.gov/agencies/ebsa/about-
ebsa/our-activities/resource-center/faqs/aca-part-18) ............................................4, 6

## I.      INTRODUCTION

The PNC Financial Services Group, Inc. Group Benefit Plan ("Plan") undisputedly does not charge a single tobacco surcharge to participants who indicate an intent to complete a tobacco cessation program within 120 days of benefit commencement and do so within that time. Participants who do not meet the requisite criteria during this "once each year" window but subsequently complete a tobacco cessation program still receive the reward of having their surcharges cease prospectively.  Given these undisputed facts, Plaintiff argues that because the Plan provides a reward for completion of the tobacco cessation program after the 120-day window by prospectively ending surcharges, all individuals who complete a program after that window (or after failing to complete the proper paperwork during open enrollment) must also be retroactively reimbursed for any tobacco surcharges paid.  But this "no good deed goes unpunished" approach cannot be squared with the statute itself, which only requires that eligible individuals be given the opportunity to qualify for the full reward "once each year," 42 U.S.C. § 300gg-4(j)(3)(C).  Indeed, encouraging early completion of a tobacco cessation program by providing a larger reward for completion during the once-a-year window clearly fosters the goal of promoting health and preventing disease.  *See Plesha v. Ascension Health Alliance*, No. 24-1459, 2026 WL 279321, at *5 (E.D. Mo. Feb. 3, 2026) (recognizing wisdom of incentivizing tobacco users to complete cessation programs "earlier rather than later" and that one way to do so "is to allow members to receive a greater monetary reward for completing the program sooner").

Plaintiff also implicitly admits that the SPD contains all the requisite notice language, but argues that her notice claim should still survive because either the program described in the SPD is non-compliant (which it is not, as addressed above) or there *may* be other Plan documents that do not contain all requisite language. Such speculative and vague allegations are not enough to

1

state a claim because "[a]s *Iqbal* makes clear, a plausible claim must come *before* discovery, not the other way around." *Noel v. Pepsico, Inc.,* No. 24-cv-7516, 2026 WL 558118, at \*13 (S.D.N.Y. Feb. 27, 2026) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Lastly, despite Plaintiff's attempt to suggest otherwise, none of her fiduciary breach claims, including for prohibited transactions, are plausible because, *inter alia*: (a) 29 U.S.C. §1132(a)(2) requires allegation of harm to the Plan not present here and does not provide for relief for disgorgement, (b) labeling ministerial acts required by the Plan terms as "discretionary" does not turn them into fiduciary acts and (c) Plaintiff has not plausibly alleged the elements of a prohibited transaction under either 29 U.S.C. §§ 1106(a)(1)(D) or (b)(1).  Plaintiff's complaint should be dismissed in its entirety.

## II.    ARGUMENT

### A.    Plaintiff Has Not Pled A Plausible Claim For Failure to Offer a Reasonable Alternative or Provide A Full Reward under ERISA or the PHSA (Count I).

#### 1.    There is No Statutory Basis for Plaintiff's Claim that ERISA Entitles Her to a Reasonable Alternative Standard.

Plaintiff argues that the wellness program at issue is an outcome-based program, and, therefore, under the Department of Labor's 2013 regulations[1], as codified at 29 CFR § 2590.702(f)(4)(iv)(A), the reasonable alternative must be offered to everyone, even if the otherwise applicable standard was neither medically inadvisable nor unreasonably difficult for them due to a medical condition, as the statute requires. *Compare* 29 CFR § 2590.702(f)(4)(iv)(A) *with* 42 U.S.C. § 300gg-4(j)(3)(D)(i).  Plaintiff cannot sue to enforce this regulation because it impermissibly reads the "medical condition," "unreasonably difficult," and "medically inadvisable" provisions out of the statute entirely, contradicting fundamental principles of statutory

---

[1] *See* Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33,158 (June 3, 2013) (the "2013 Regulations").

construction. *See, e.g., Corley v. U.S.*, 556 U.S. 303, 314 (2009) (courts should construe a statutory scheme "so that effect is given to all its provisions"); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best.  In the business of statutory interpretation, if it is not the best, it is not permissible.").

The DOL first promulgated regulations interpreting the statute in 2006.  *See* Nondiscrimination and Wellness Programs in Health Coverage in the Group Market, 71 Fed. Reg. 75,014, at 75,018 (Dec. 13, 2006) (the "2006 Regulations").  The 2006 Regulations articulated the "reasonable alternative standard" requirement for "certain individuals" with qualifying medical conditions."  *Id.* at 75,028.  Congress then codified the 2006 Regulations nearly word for word in 2010 through the Affordable Care Act.  78 Fed. Reg. at 33,159 (explaining that the ACA amended ERISA's "nondiscrimination and wellness provisions…[to] largely reflect the 2006 regulations."). The 2013 Regulations purported to expand the reasonable alternative standard requirements to apply to all individuals in an outcome-based program, not just those with qualifying "medical conditions" as set forth in the 2010 statute, but this attempted expansion is not based on (and is inconsistent with) the statutory language.

To be clear, Plaintiff's argument that she is entitled to a "reasonable alternative standard" even without an alleged qualifying medical condition finds no support in the *statutory* language, as it must to carry the day.  The meaning of that statute was "fixed at the time of enactment" in 2010 and mirrored the requirements in the 2006 Regulations.  *Loper Bright*, 603 U.S. at 400.  The additional requirements in the 2013 Regulations— which do not reflect the best reading (or any

3

reading) of the statutory language—are not enforceable.  *Id.*;[2] *see also Zheng v. Gonzales*, 422 F.3d 98, 120 (3d Cir. 2005) (holding a regulation invalid when it was inconsistent with the plan language of the statute).[3]

### 2.     A "Full Reward" is "Made Available" to Anyone Who Qualifies For the Reward During The Once Each Year Opportunity.

Even if the 2013 Regulations imposed a requirement that the full reward be made available to anyone who qualifies, regardless of medical condition, the Plan offered reasonable alternatives to *all* participants, and it made available the full reward to anyone who satisfied the reasonable alternative during the requisite once-a-year opportunity to qualify for the reward.  42 U.S.C. § 300gg-4(j)(3)(C).[4]  Anyone who indicates during the open enrollment period that they use tobacco but intend to complete a tobacco cessation program within 120 days of benefit commencement, and does so, receives the "full reward," as they will never pay a single tobacco surcharge.  SPD, Ex. 1 at p. 6.  And anyone who missed this opportunity could take steps to receive a pro rata reward, consistent with Department of Labor Frequently Asked Question No. 8.  *See* About Affordable Care Act Implementation (Part XVIII) & Mental Health Parity Implementation (Jan. 9, 2014) at 6 (https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-18) ("DOL FAQ 8").

---

[2] Plaintiff cites to the statement in *Pepsico*, 2026 WL 558118, at *7, that the court found "no reason to depart from the majority [on] the question of standing."  Opp. at 8.  PNC has never argued that Plaintiff lacks standing to bring her Count I claims, so this citation is irrelevant.  And *Pepsico* did not reach the issue of whether the 2013 Regulations were inconsistent with the plain statutory language, instead suggesting whether or not the term "full reward" always necessitated retroactive reimbursement after completion of a cessation program was dispositive.  *Id.* at *10-12.

[3] While the Secretary of Labor was given authority to promulgate regulations under 42 U.S.C. § 300gg-4(n) and 29 U.S.C. § 1135, such authority does not allow an agency to enact regulations that are inconsistent with the statutory language.

[4] The regulation also requires the same "at least once per year."  29 C.F.R. § 2590.702(f)(4)(i).

Plaintiff argues that this still violates the statute because, in her view, if a plan chooses to offer a tobacco cessation program year-round, then the plan must also offer retroactive surcharge reimbursements for the "full reward" to be "made available" to similarly situated individuals. But to arrive at this conclusion, one must read out of the statute altogether the requirement that the chance to qualify for the full reward be offered only "once per year". *See, e.g., Bailey v. Sedgwick Claims Mgmt. Servs. Inc.*, No. 24-cv-2749, 2025 WL 2779899, at \*11 (W.D. Tenn. Sept. 26, 2025) ("to read the regulations and the statute to require full retroactive refund to all participants who complete the [tobacco cessation] program at any point in the year would make the requirement that '[t]he plan shall give individuals eligible for the program the opportunity to qualify for the reward under the program at least once each year' superfluous."). But doing so is inconsistent with a basic principle of statutory construction that courts should construe a statutory scheme "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley*, 556 U.S. at 314. Plaintiff's argument that imposing a deadline to complete the tobacco cessation program to receive the full reward constitutes impermissible differential treatment among "similarly situated" individuals cannot be reconciled with the "at least once each year" statutory language, as many other courts have recognized. *See, e.g., Chirinian v. Travelers Companies, Inc.*, No. 24-3956, 2025 WL 2147271, at \*7-8 (D. Minn. July 29, 2025) (plaintiff's interpretation would render the once a year language "inoperative and superfluous" which "is an unacceptable interpretative result."); *Bailey*, 2025 WL 2779899, at \*11 (same); *Trout v. Meijer, Inc.*, No. 25-1378, 2026 WL 1098213, at \*4 (W.D. Mich. Apr. 23, 2026) (same).[5]

---

[5] For this same reason, the Secretary of Labor's 2005 brief in *Secretary of Labor v. Macy's, Inc.* cannot support the conclusion that failing to reimburse surcharges during the entire plan year deprives participants of the "full reward" and constitutes discrimination, as it "would once again render the 'frequency of opportunity' language superfluous." *Bailey*, 2025 WL 2779899, at \*11. And, regardless, the Secretary's discussion of retroactive rewards arose in a materially different

5

Moreover, under Plaintiff's proposed interpretation, PNC could bring its plan into compliance with the statute by not offering the tobacco cessation program after the 120-day window, so that after that period participants could receive *no* reward (instead of a pro rata reward). This "interprets a provision meant to *ensure* employees' access to rewards as in effect *penalizing* employers who offer more opportunities to qualify for rewards. As one court remarked when rejecting the same argument, '[t]his no-good-deed-goes-unpunished interpretation is contrary to logic.'" *Trout*, 2026 WL 1098213, at *4 (quoting *Pepsico*, 2026 WL 558118, at *12); *see also Chirinian*, 2025 WL 2147271, at *8*; *Bailey*, 2025 WL 2779899, at *10.

Plaintiff also attempts to argue that DOL FAQ 8 does not permit pro rata "prospective-only" rewards under PNC's Plan, because it only addressed additional access to the tobacco cessation program for those who did not originally qualify. But DOL FAQ 8 explicitly states that "[n]othing … prevents a plan or issuer from allowing rewards (including pro-rated reward) for mid-year enrollment…" ([https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center /faqs /aca-part-18](https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-18)). This clearly allows both the full reward for those who qualify during the once-per-year period, and pro rata rewards for those who enroll in a tobacco cessation program after the annual window to qualify for the full reward has closed. *See, e.g.*, *Pepsico*, 2026 WL 558118, at *12 ("[t]hat Defendants choose to offer the opportunity for a prospective reward for those who complete the program after the cutoff does not mean they cannot impose a cutoff for the full-year reward."); *Trout*, 2026 WL 1098213, at *4 (The statute "requires employers to allow

---

context because Macy's did not provide any opportunity to completely avoid tobacco surcharges, unlike this case. *See Sec'y of Lab. v. Macy's,* No. 1:17-cv-541, 2021 WL 5359769, at *15 (S.D. Ohio Nov. 17, 2021). *See also Chirinian*, 2025 WL 2147271, at *8 (holding Macy's was inapposite on that basis); *Bailey*, 2025 WL 2779899, at *11 (same).

employees to qualify for the full reward at least once per year.  As long as employers meet that requirement, they are free to offer additional opportunities to qualify for a partial reward.").[6]

### 3. Plaintiff Has Not Pled Facts Sufficient to Suggest That The Plan Was Not Reasonably Designed To Promote Health or Prevent Disease.

The Plan here also undisputedly complies with the requirement that a wellness program "shall be reasonably designed to promote health or prevent disease."  42 U.S.C. § 300gg-4(j)(3)(B). Specifically, the Plan is designed to incentivize participants to not smoke, and if they do smoke, to complete a tobacco cessation program as soon as possible. As discussed at length *supra*, the statute specifically contemplates that the "opportunity to qualify for the reward" only need to be offered "once each year," 42 U.S.C. § 300gg-4(j)(3)(C), making it clear that having deadlines to take the steps necessary to qualify for the full reward does not suddenly turn a bona fide wellness program into one not reasonably designed to promote health.  *See also* 78 Fed. Reg. at 33,162 (stating that 42 U.S.C. § 300gg-4(j)(3)(C) creates a "bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease.").

Nonetheless, Plaintiff cries inequity if someone who fails to fill out the required "clerical election" during the set enrollment period cannot still receive the full reward.  But a participant who fails to fill out other required enrollment forms during that same period would not be entitled to any health insurance coverage at all (absent a change of status).  SPD, Ex. 1 at 7.  Plaintiff does

---

[6] The cases Plaintiff cites in her Opposition at p.12 for the proposition that the full reward may require retroactive reimbursement are ones in which *all* tobacco users had to pay some tobacco surcharges and there was no opportunity to avoid them, unlike here where tobacco users could avoid paying *any* surcharge if they completed the tobacco cessation program within the 120-day window. *See Leslie v. Rentokil N. Amer. Inc*, No. 25-1423, 2026 WL 950490, at *2 (E.D. Pa. Apr. 8, 2026); *Wilson v. Whole Food Market*, No. 25-85, 2026 WL 196517, at *2 (W.D. Tex. Jan. 20, 2026).  And there are just as many, if not more, cases that reject that the retroactive reimbursement is *ever* required for the "full reward." *See* p. 11, *infra*.

not and cannot cite to any legal authority suggesting that tobacco attestations similar to those required by the Plan here were not "reasonably designed to promote health or prevent disease."

Plaintiff also claims that providing four months for completion of a tobacco cessation program in order to receive the full reward is not reasonably designed to promote health. Opp. at 14. But the preamble to the DOL's 2013 regulations on nondiscriminatory wellness programs confirms that it is. 78 Fed. Reg. at 33,163 (suggesting January through April 1 as an example of providing the necessary time to satisfy a reasonable alternative standard); *see also Bailey*, 2025 WL 2779899, at *12 (stating that under this preamble language what constitutes "some time" sufficient to complete the program likely means three months); *see also Plesha*, 2026 WL 279321, at *5 (program was designed to prevent health or disease when incentivizing members to complete a tobacco cessation program earlier in the year and did so by providing greater monetary reward for completing the program sooner). Plaintiff acknowledges the program can take six to eight weeks to complete, but participants have *sixteen* weeks from benefit commencement to complete it. SPD, Ex. 1 at 6.

Moreover, the fact that a tobacco user who completes a cessation program more than four months after benefit commencement may pay a month or two of tobacco surcharges does not render the design of the plan unreasonable because participants who complete a tobacco cessation program later in the year still receive the reward of having any prospective surcharges cease, *id.*, and a number of courts have held that simply prospectively ending the surcharge can itself be considered the "full reward." *See, e.g.*, *Williams v. Bally's Management*, 813 F. Supp. 3d 263, 279 (D.R.I. 2025) ("full reward" is prospective cessation of surcharges and does not require retroactive reimbursement); *Parker v. TTEC Holdings, Inc.*, No. 24-3148, 2026 WL 917789, at *5-6 (D. Col. Mar. 30, 2026) (same); *Plesha*, 2026 WL 279321, at *4-6 (same); *Pepsico*, 2026 WL 558118, at

8

*10 ("If an employer creates a program where the reward is the absence of a surcharge, and the surcharge is indeed fully removed once participants complete the reasonable alternative standard, it would be logical to conclude that the employer has thus provided the full reward – *i.e.*, the complete removal of the surcharge.").[7]

Lastly, Plaintiff argues at the motion to dismiss stage, this court must accept the allegation in the Complaint that this Plan is not reasonably designed to promote health or prevent disease. Opp. at 14-15.  But when deciding a Rule 12(b)(6) motion, courts do not have to accept such legal conclusions. *See, e.g., In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) (the court need not credit "'bald assertions' or 'legal conclusions'").  And other courts have held that programs that had deadlines to complete the tobacco cessation program in order to receive the full reward did not violate PHSA or ERISA as a matter of law.  *See, e.g., Trout*, 2026 WL 1098212, at *4 (explaining the statute was designed to prevent discrimination based on health, not "based on the time of year a participant qualifies for the program"); *Pepsico*, 2026 WL 558118, at *11-12; *Bailey*, 2025 WL 2779899, at *12; *Chirinian*, 2025 WL 2147271, at *7-8.

**B.     Plaintiff Has Not Pled A Plausible Notice Claim (Count II) Under ERISA and the PHSA.**

Plaintiff alleges that she "does not have access, at this stage, to all Plan communications" to determine whether they comply with the statute, so she should be able to survive a motion to dismiss based on vague allegations that there are other materials that do not comply. Opp. at 15. As explained previously, courts hold that these sorts of threadbare and conclusory allegations about possible non-complaint documents should be disregarded.  *See* Def's Brief ("Br.") at 15 n.4.  Once

---

[7] Plaintiff cites to only a single report and recommendation that found the limit on time to complete the tobacco cessation program not to be reasonably designed. *Knight v. LHC Group, Inc.,* No. 25-263, 2025 WL 4351515 (W.D. La. Nov. 18, 2025), *R&R adopted*, 2026 WL 513477 (W.D. La. Feb. 24, 2026). But, respectfully, that case was wrongly decided, and does not have any persuasive value as it did not address the 2013 regulatory preamble language.

again, "a plausible claim must come *before* discovery, not the other way around." *PepsiCo*, 2026 WL 558118, at *13 (emphasis in original) (internal citation omitted).[8]

Plaintiff admits that the one document pled with specificity – the Plan SPD – contained all the requisite information but alleges that the alternate standard described in the SPD was not "reasonable." This is wrong, for the reasons discussed *supra*, and Plaintiff has pled no viable notice violation.

### C. Plaintiff Does Not Have Standing Under ERISA Section 502(a)(2) And Has Not Otherwise Pled A Plausible Claim In Counts III and IV.

#### 1. Plaintiff Cannot Bring A Claim Under ERISA Section 502(a)(2) As She Has Not Adequately Pled Injury To the Plan.

Plaintiff argues that PNC conflates standing with the merits on the ERISA Section 502(a)(2) claim. The harm Plaintiff alleges – out-of-pocket losses from tobacco surcharge collection – is not an injury to the Plan and therefore cannot establish standing on this claim. *See Bally's Mgmt.*, 813 F. Supp. 3d at 273.[9] Regardless, whether on the basis of standing or on the merits under Rule 12(b)(6), Plaintiff's failure to allege such harm *to the plan* means that her ERISA Section 502(a)(2) claims under Count III must be dismissed.

Plaintiff's contention that a financial loss to the plan is not necessary to seek disgorgement of profits is irrelevant because such relief cannot be sought on behalf of the Plan in any event and

---

[8] In the *AEP* case Plaintiff cites in her Opposition at p.16, a fact question existed as to the materiality of misrepresentations in SEC filings and SPDs. *See In re: AEP ERISA Litig.*, 327 F. Supp. 2d 812, 832 (S.D. Ohio 2004). This does not suggest Plaintiff stated a plausible notice claim here. And while *Siko v. Kassab, Achbold & O'Brien*, No. 98-402, 1998 WL 464900, at *1 (E.D. Pa. Aug. 5, 1998) stated that a plaintiff cannot be expected to "proffer all of the available evidence concerning the plaintiff's claim at pleading stage," it went onto say that the plaintiff claiming discrimination would still need to allege "the specific conduct, [including] the time, the place and those responsible" for the discrimination. Here, Plaintiff alleges no analogous facts, and cannot look to discovery to determine if there are other documents that might form the basis for a claim.
[9] The Supreme Court has held that constitutional standing under Article III is not "commutative," meaning that constitutional standing to assert one claim does not mean that a plaintiff also has standing to assert other claims. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

is only available under ERISA Section 502(a)(3), not 502(a)(2).  *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 412 (3rd Cir. 2013) ("Edmonson seeks disgorgement of the profits earned by Lincoln from investment of the retained assets under 29 U.S.C. § 1132(a)(3)"); *see also Varity Corp. v. Howe*, 516 U.S. 489, 490 (1995) ("Congress intended the general 'catchall' provisions of subsection[] [502(a)](3) … to act as a safety net, offering appropriate equitable relief for injuries caused by violations that Section 502 *does not elsewhere adequately remedy*") (emphasis added).[10]

Nor does Plaintiff's allegation that PNC reduced the amounts it contributed to the Plan as a result of the tobacco surcharge show harm to the Plan or relief running to the Plan.  If the tobacco surcharge amounts were refunded to participants and replaced with funds from PNC, the Plan would be no better off.  *See, e.g., Parker*, 2026 WL 917789, at *6; *Schultz v. Glenn Falls Hosp.*, No. 25-581, 2026 WL 850332, at *11-12 (N.D.N.Y. Mar. 26, 2026); *Pepsico*, 2026 WL 558118, at *14; *Chirinian*, 2025 WL 2147271, at *12.[11]

2. **Plaintiff Has Pled No Plausible Breach of Fiduciary Duty or Prohibited Transaction Based on Imposing and Lifting Tobacco Surcharges Or Using Surcharges To Pay Plan Benefits.**

Plaintiff's Opposition wrongly labels as "discretionary" the self-evidently ministerial acts of imposing and lifting surcharges – act which do not suffice as fiduciary conduct.  What Plaintiff calls a discretionary decision on "what relief mid-year completers would receive," Opp. at 20, actually refers to the uniform implementation of the Plan terms that provide for prospective

---

[10] Plaintiff also cites *In re: Schering-Plough ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005), which does not involve disgorgement, nor is it in any way analogous to the situation here, because the alleged breach of fiduciary duty there (offering an alleged imprudent stock fund) caused a loss *to the retirement plan* by decreasing the value of the plan stock assets, *id.* at 235, whereas the harm alleged here of paying an improper tobacco surcharge is only to the individuals.

[11] Even the case Plaintiff cites, *Lipari-Williams v. Missouri Gaming Co.,* 339 F.R.D 515, 527 (W.D. Mo. 2021), a class certification decision issued after discovery (i.e., not a motion to dismiss as here), correctly recognizes that "[a]bsent the surcharge, the Plan would likely have had approximately the same amount of money." *Id.*

termination of surcharges for those completing tobacco cessation programs outside the 120-day window.  Such implementation of the Plan terms is a ministerial rather than fiduciary act, and Plaintiff does not allege anywhere in the Complaint that PNC had discretion under the Plan to decide not to provide this prospective relief.[12]  *See, e.g.*, *Trout*, 2026 WL 1098213 at *13 ("the imposition of the surcharge was a decision made by Meijer in its settlor capacity, not in its fiduciary capacity" and "collection of surcharges is a feature of plan design, not an aspect of managing plan assets"); *Greene v. Progressive Corp.*, No. 24-1890, 2026 WL 785004, at *11 (N.D. Ohio Mar. 20, 2026) (same); *Plesha*, 2026 WL 279321, at *9 (same); *Pepsico*, 2026 WL 558118, at *13 (same); *Macy's, Inc.*, 2021 WL 5359769, at *18, *reconsideration denied*, 2022 WL 407238, at *3-5 (S.D. Ohio Feb. 10, 2022) (same).

As to the allegations that PNC engaged in a fiduciary breach and prohibited transaction by using surcharges to pay plan benefits in lieu of amounts it could have contributed, assuming this could constitute a fiduciary act, this does not state a claim absent an allegation that PNC failed to abide by the terms of the plan in paying those benefits or that participants were receiving less than what they were promised under the plan.  *See* Br. at 22-23*; see also Trout*, 2026 WL 1098213 at

---

[12] This is in direct contrast to the *Bokma* case, which credited Plaintiff's allegation in the complaint the defendant had discretion to decide whether an individual who completed the tobacco cessation program would receive retroactive reimbursement for surcharges already paid and how refunds were administered.  *Bokma v. Performance Food Group, Inc.*, 783 F. Supp. 3d 882, 890 (E.D. Va. 2025).  Moreover, in *Bailey*, the court recognized that "[s]etting up the terms of the program, including the June 30 deadline for retroactive reimbursement; implementing the program on those terms; and preparing the communication materials are not acts that generate fiduciary duties," and plaintiff's allegation "that Sedgwick was a fiduciary when it assessed and collected the allegedly unlawful tobacco surcharge … runs counter to 29 C.F.R. § 2509.75–8."  2025 WL 2779899, at *18.  And in *Mehlberg v. Compass Grp. USA, Inc.*, No. 24-4179, 2025 WL 1260700, at *7 (W.D. Mo. Apr. 15, 2025), the plaintiff specifically alleged that the defendant acted "in violation of the terms of the Plan" in assessing and collecting the tobacco surcharge, which is an allegation not present here.  Finally, in both *Waggoner v. The Carle Found.*, No. 24-2217, ECF No. 27 at 65 (C.D. Ill. Sept. 16, 2025), and *Wilson*, 2026 WL 196517, at *13, the suggestions that implementing plan terms *might* be a fiduciary act were *dicta* and not the basis for any holding.

*1, *12 (dismissing fiduciary breach and prohibited transaction claims because the allegation that plan used surcharge to offset its own contributions did not state a claim absent any allegations that this violated the plan terms); *Pepsico*, 2026 WL 558118, at *14 (dismissing fiduciary breach claims based on same allegations present here that defendants withhold surcharge amounts from participants' paychecks, deposit those amounts into Pepsi's general accounts, earning interest, and then use them to offset their own obligations to contribute to the plan, because this was not inconsistent with the plan terms and amounts contributed to the plan would be the same regardless of source).[13]

### 3.    Plaintiff Has Pled No Plausible Prohibited Transactions Under 29 U.S.C. §§ 1106(a)(1)(D) or (b)(1).

Plaintiff incorrectly argues that the tobacco surcharges are Plan assets based on 29 C.F.R. § 2510.3-102. A number of courts have rejected such legal conclusions where, as here, the complaint does not allege that the funds were held for over ninety-days or beyond the period they could have reasonably been segregated from the employer's general assets as stated in the regulation. *See, e.g.*, *Schultz*, 2026 WL 850332, at *12 (no prohibited transactions alleged where "complaint is devoid of allegations that Defendant retained these [surcharge] funds beyond the ninety-day limitation" and regulation provides that the earliest date on which such amounts can

---

[13] Contrary to Plaintiff's claim, *Hughes Aircraft Co v. Jacobson*, 525 U.S. 432, 445-56 (1999) and *Lockheed Corp. v. Spink*, 517 U.S. 882, 892-94 (1996) are not just about fiduciary versus sponsor conduct – they also made clear that there is no breach of fiduciary duty or prohibited transaction in taking otherwise lawful actions, simply because they may benefit the employer indirectly. And as to the cases Plaintiff alleges are not persuasive because they involved forfeiture provisions "whose terms complied with ERISA," this distinction is meaningless as plaintiffs in those cases alleged the forfeitures and plan terms permitting them violated ERISA, just like Plaintiff here alleges the tobacco surcharges and Plan terms permitting them violate ERISA. *See Barragan v. Honeywell Int'l Inc.*, No. 24-4529, 2025 WL 2383652, at *1 (D.N.J. Aug. 18, 2025); *Fumich v. NovoNordisk*, No. 24-9158, 2025 WL 2399134, at *3, *7 (D.N.J. Aug. 19, 2025); *Cain v. Siemens Corp.*, No. 24-8730, 2025 WL 2172684, at *2, 4-5 (D.N.J. July 31, 2025).

reasonably be segregated from employer's general assets can be up to ninety days); *Fisher v. GardaWorld Cash Serv. Inc.*, No. 24-837, 2025 WL 2484271, *8 (W.D. N.C. Aug. 28. 2025) (same); *Pepsico,* 2026 WL 558118, at *15 n. 14 ("[W]ithheld wages do not become plan assets until the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets, which can be up to ninety days from the date that the funds were withheld." (citing 29 C.F.R. § 2510.3-102(a), (c))); *Trout*, 2026 WL 1098213 at *13 (dismissing prohibited transaction claim where there were insufficient facts alleged for the court to "discern whether the surcharges were plan assets").

Even assuming the tobacco surcharges were Plan assets during the relevant period, Plaintiff cannot state a plausible prohibited transaction claim. Plaintiff first argues PNC, when collecting and retaining tobacco surcharges and reducing its own contributions, was acting as a fiduciary and causing the plan to engage in "a transaction" that it knew or should have known constituted a "transfer to, or use by or for the benefit of a party in interest, of any asserts of the plan." 29 U.S.C. § 1106(a)(1)(D). Plaintiff's allegation assumes that PNC was both the fiduciary (which is wrong for the reasons discussed *supra*) and party in interest with respect to such transaction. But an entity cannot be both the fiduciary and party in interest under § 1106(a)(1)(D). *See Danza v. Fidelity Mgmt. Tr. Co.*, 533 F. App'x 120, 125 n.3 (3d Cir. 2013) (stating that to the extent a party was "both a fiduciary of the plan and a party in interest … conduct in causing the plan to pay the fee for its own benefit cannot trigger liability under ERISA Section 406(a) because this section deals with transactions *between two distinct parties*.") (emphasis added).

As to ERISA's prohibition on a "transactions between plan and fiduciary" where the fiduciary "deal[s] with the assets of the plan in his own interest," 29 U.S.C. § 1106(b)(1), as previously explained, using plan assets (in the form of the tobacco surcharge) to pay plan benefits

14

isn't a transaction, much less a prohibited transaction. Br. at 23-24 (citing, *inter alia*, *Lockheed*).[14]

"To characterize the mere act of collecting premiums and/or surcharges as an unlawful transaction would essentially nullify even ERISA compliant wellness programs." *Greene*, 2026 WL 785004, at *12. [15] And just as health insurance premiums replace monies that the sponsor would otherwise have to contribute toward benefits, using tobacco surcharges to replace monies the sponsor would otherwise contribute toward benefits does not state a prohibited transaction in the absence of a plan *required* contribution, which is not alleged here. *See* Br. at 24-25; *see also Schultz*, 2026 WL 850332, at *12 (no prohibited transaction plausibly alleged where there was no allegation that "the Plan explicitly provides that unpaid contributions are Plan assets").

## III.    CONCLUSION

For all the reasons described here and in Defendant's moving brief, Plaintiff's Complaint should be dismissed in its entirety.

Dated: May 22, 2026

*s/ Stephanie R. Reiss*
Stephanie R. Reiss (PA ID No. 88316)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA  15219
Tel: (412) 560-3378
Fax: (412) 560-7001
stephanie.reiss@morganlewis.com

---

[14] Plaintiff attempts to distinguish the Supreme Court's decision in *Lockheed* by arguing that that the relevant transaction is PNC's temporary retention of the tobacco surcharges in its own accounts and "ultimately appl[ying] those amounts [toward the Plan] to reduce PNC's own funding". Opp. at 24.  But this still assumes that the tobacco surcharge amounts at issue were used toward Plan benefits.  Many of the other cases Plaintiff cites do not even conduct any analysis under 29 U.S.C. § 1106 and merely state that the plaintiffs plausibly alleged breach of fiduciary duty.  *See, e.g., Leslie*, 2026 WL 950490, at *12; *Wilson*, 2025 WL 196517, at *13; *Mehlberg*, 2025 WL 1260700, at *7.

[15] Plaintiff cites to a Sixth Circuit case, *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 864, 868 (6th Cir. 2013), but that was a § 1106(b)(1) case where the OTG fee collected by the insurer was *not* the premium but a fee it used to cover payments it owed to the state, and such fee was not even contemplated in its agreement with the plan at issue.

Jeremy P. Blumenfeld (*pro hac vice forthcoming*)
Melissa D. Hill (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax (212) 309-6001
jeremy.blumenfeld@morganlewis.com
melissa.hill@morganlewis.com

*Attorneys for Defendant*